THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
HÉCTOR PACHECO STEVENSON, Defendant and Appellant.

No. 16533.   Decided November 17, 1961.

*R. Davis Vázquez* for appellant.   *J. B. Fernández Badillo, Attorney General,* and *Juan A. Faría, Assistant Attorney General,* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo and Mr. Justice Dávila.

PER CURIAM.

The appellant and another person named Juan Figueroa were charged with murder in the first degree.   They were jointly tried and the jury returned a verdict of guilty.   Before dying and in the presence of several persons and upon questioning by a policeman, the victim named the appellant.

as the person who had given the deadly weapon to the other defendant. On appeal, they assign as reversible errors: (1) the tenor of the instructions on dying declarations given by the trial judge; (2) the failure to strike out that portion of the confession made by the other defendant naming the appellant herein; (3) the failure to give certain instructions allegedly requested by the appellant; (4) the failure to charge the jury that they could return a verdict of other degrees against each of the defendants; and (5) having admitted in evidence a photograph of the victim taken in the hospital after she was already dead.

In the discussion of the first error assigned, the appellant transcribes only a portion of the instructions given by the judge on the admissibility of dying declarations, which reads as follows:

"The legal force of dying declarations, i. e., their credibility, rests on the belief that the dying person is conscious that he is going to pass on to eternity, that he is incapable of lying in the solemn moment in which his spirit prepares itself to enter the unknown, and that is why the law requires that the declarant must have given up any hope of living, for, if there is any, the declaration can not and should not be considered."

The appellant contends that since the judge, in explaining to the jury the reason for admitting dying declarations, stated that a person in such condition is deemed incapable of lying, this could have confounded the jury to such an extent as to believe that credence should always be given to these declarations and, obviously, that this prejudiced the defendant.

██ Once again we repeat that an isolated portion of certain instructions should not be alleged in support of an error in a petition for appeal. The instructions, we have repeated on numerous occasions, must be considered as a whole in order to determine whether or not they conform to law. The trial judge on two different occasions, one, when the evidence on the dying declaration was introduced, and

another, in charging the jury before it retired to deliberate, explained the jury's function in weighing the evidence. On the first occasion he said to them:

" . . . However, and this is most important, ladies and gentlemen of the jury. It is your duty, ladies and gentlemen of the jury, as judges of facts, to determine, in the first place, if as a question of fact those statements allegedly made by Ángela Santos Bracero constitute or not a declaration made on the verge of death, i. e., a dying declaration. It is your duty to decide, as judges of facts, whether those statements constitute or not a dying declaration, and it is your duty also, as judges of facts, to determine whether or not you believe those statements. In other words, it is your duty to determine the degree of credibility, the degree of truthfulness which those statements allegedly made by Ángela Santos Bracero, through Dr. Ventimilla, deserve."

In the second instruction, the following:

"If you are satisfied, as a matter of fact, from the weighing of the evidence presented here, that Ángela Santos Bracero was in imminent danger of death and that she was aware of her condition, that is, that she realized that she was very ill, you may then consider the declaration of that dying person, and it is your province to determine whether or not such declaration was made and whether or not it is true. In other words, if you are satisfied from the weighing of the evidence that Ángela Santos Bracero was in imminent danger of death at the time she made the declaration and that she was aware of her condition, you may then consider her declaration, and it is your duty to determine, like any other evidence, whether such declaration was made and whether or not it is true."

This disposes of the first error.

In the confession made by the codefendant and which was admitted in evidence reference is made to the appellant. He was asked:

Q.—Did you tell Bonye (the appellant) anything about what you propose to do?

A.—Yes, sir, I told him the same night, that if I found her I would kill her.

He contends that that portion should have been stricken out, since, obviously, it would prejudice him when it is brought to the jury for consideration. But in charging the jury the judge made it clear that they ought not take into consideration anything stated in the confession against the other defendant. The judge stated as follows: "Those statements or acts attributed to Héctor Pacheco Stevenson (appellant herein), speaking through Juan Figueroa Ortiz, which incriminate Héctor Pacheco Stevenson, can not be taken into consideration in deciding the case against Héctor Pacheco Stevenson," and he went on to make other considerations on the same point for the purpose of clarifying the question to the jury. It appears from the record that the judge asked the gentlemen of the jury whether they had understood and that they said that they did (Tr. Ev. 459–60). The second error was not committed.

The third error assigned is to the effect that "the trial court erred in refusing to give the following instructions requested by the appellant:

"1. The credibility and weight of dying declarations are questions for the jury to determine which are not necessarily compulsory nor conclusive as to the facts set forth therein.

"Dying declarations must be viewed with caution. They should be weighed with a view to the lack of opportunity of the defendant to cross-examine the declarant, and his mental and physical condition, his conduct, and whether he was influenced by malice, desires of vengeance, or prejudice.

"2. The mere presence of a person at the place where an offense is committed and his knowledge that such offense is going to be committed, is not sufficient at law to sustain the conviction of a person accused of being principal in an offense. It is necessary to prove beyond a reasonable doubt that the defendant takes part in the intent of the author of the offense, in this case the deceased's death. In other words, there should be unity of purpose and a meeting of the minds in producing a specific result. The accused should advise and abet the author of the offense to commit it."

It appears from the record of the case that none of these instructions were requested by the defense. Yet, the first portion of the first instruction is covered by those which were given by the judge concerning dying declarations.

As respects the second instruction on the presence of a person at the place where an offense is committed, although the same does not appear to have been requested in the specific terms in which it is now drawn up, the fact is that at the termination of the instructions the attorney for the appellant said: "We also take exception to the refusal of the Hon. Court to charge the jury as to whether a person who witnesses the commission of an offense and does not intervene in order to prevent it, can not be found guilty jointly with the author unless he is under legal obligation to do so." This, we believe, amounts to a request for an instruction in the same language as the instruction copied above. However, the fact is that the judge gave a specific instruction on this question which should be considered, keeping in mind the fact that there is evidence in the case that the appellant gave the deadly weapon to the other defendant. The instructions read as follows:

"The mere presence of a person at the place where an offense is committed and his knowledge that such offense is going to be committed, is not by itself sufficient at law to sustain the conviction of such person as principal in such offense, but it is necessary to introduce evidence to show participation in some of the modalities prescribed by § 93 of the Penal Code of Puerto Rico in the commission of the wrongful acts. In order that a person may be convicted as principal in an offense, it is necessary to establish beyond question his participation in the commission of the offense. In other words, it is necessary to establish a unity of purpose and a meeting of the minds in achieving a specific result, in this case the death of Ángela Santos Bracero."

The fourth error is to the effect that the judge should have charged the jury that it could return a verdict of other

degrees against each of the defendants. But the fact is that the judge did so. He charged the jury as follows:

"If the gentlemen of the jury have any doubt as to whether murder in the first degree or in the second degree was committed or whether it was voluntary homicide, it is your duty to give the benefit of the doubt to the defendants and to find them guilty of the lesser offense, *i.e.,* of the offense on which you have no doubt, if you find beyond a reasonable doubt that the defendants committed such offense.

"If the gentlemen of the jury find that no offense has been committed, or that it has not been fully established that the death of Ángela Santos Bracero was due to an act of the defendants, or if you find that their guilt has not been established at all, or if you entertain reasonable and well-founded doubt, or if you believe that the elements of the offense or any of them have not been established, or if you have reasonable and well-founded doubt on the latter particular, in any of those cases it is your duty to find the defendants not guilty. You may also find guilty one of the defendants and acquit the other, and you may apply the doubt to one as well as to the other. You may therefore find that one of the defendants committed the offense and that the other did not, or acquit one and convict the other, or you may find that one defendant committed the offense and entertain a reasonable and well-founded doubt as to whether or not the other committed it. You may therefore find both guilty, if you believe beyond a reasonable doubt that the offense has been committed as charged and you may find one guilty and acquit the other; you may acquit both of them if you have doubt as to both of them, or find one guilty and acquit the other if you have any doubt that one of them committed the offense."

Thus, if they could acquit one and convict the other, they could find one guilty of a lesser offense than the other. Neither was this error committed.

■ Regarding the fifth error assigned to the effect that a photograph of the victim was admitted, we have already held that it is not error where, as in the instant case, it is

admitted for the purpose of showing the number of wounds inflicted and their extent. *People* v. *Rivera, ante*, p. 452, and *People* v. *Fournier*, 80 P.R.R. 376 (1958).

None of the errors assigned was committed. The judgment appealed from will be affirmed.